UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Damonte Jerome Lavell Harris,<br>*also known as Damonte Jerome Lavelle Harris*,<br><br>Defendant. | Case No. 20-cr-98 (SRN/TNL)<br><br>REPORT & RECOMMENDATION |

Thomas Calhoun-Lopez, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Frederick J. Goetz, Goetz & Eckland PA, 615 First Avenue Northeast, Suite 425, Minneapolis, MN 55413 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Damonte Jerome Lavelle[1] Harris's Motion to Suppress Evidence from Searches of Facebook Account, ECF No. 33. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

---

[1] As defense counsel has spelled his client's name in this fashion, the Court has done so as well.

1

A hearing was held on May 4, 2021. ECF No. 45. Assistant United States Attorney Thomas Calhoun-Lopez appeared on behalf of the United States of America (the "Government"). Attorney Frederick J. Goetz appeared on behalf of Defendant. Post-hearing briefing is now complete, and this motion is ripe for a determination by the Court.

The remaining issue before the Court is whether the search warrant was overly broad and, if so, whether the good-faith exception applies.[2]

## II. FINDINGS

The Court heard testimony from Officer Robert Lokhorst, a police officer with the City of St. Paul. The Government offered and the Court received: Exhibit 1, a screenshot of a photo posted to the timeline of a Facebook account with the vanity name "Da Real FatBoa," and Exhibit 2, the application, search warrant, and receipt, inventory, and return to search the "Da Real FatBoa" Facebook account along with another[3] Facebook account. Based upon the file and documents contained therein, along with the testimony and exhibits presented, the undersigned Magistrate Judge makes the following findings.

On February 5, 2020, Defendant was arrested after law enforcement found a firearm (a black and silver, semi-automatic 9 mm handgun) in the vehicle he was driving.

---

[2] Defendant's motion originally challenged an initial, warrantless search of the subject Facebook account that took place on February 6, 2020, and a second search pursuant to a warrant on or about February 24, 2020. *See generally* ECF No. 33. At the hearing, Defendant withdrew the challenge to the so-called warrantless search. Tr. 36:21-25, ECF No. 48; *see also* Def.'s Mem. in Supp. at 2, ECF No. 49. Defendant then limited his challenge to the overbreadth of the warrant. Tr. 36:25-37:1; *see also* Def.'s Mem. in Supp. at 2; *cf.* Tr. 10:20-11:3.

The Court notes that, although the transcript has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5, any notice of intent to request redaction was due May 24, 2021, and no such notice was filed. ECF No. 48.

[3] This second account, with the vanity name "Joe Montana," is not at issue. *See* Tr. 15:17-17:7, 22:12-22; *see generally* Ex. 2.

Tr. 15:9-12; App.[4] at 2-5 to 3-5.  The firearm was "photographed and recovered by [law enforcement]."  App. at 3-5.  Officer Lokhorst did not participate in Defendant's arrest.  Tr. 15:2-8.

Officer Lokhorst was subsequently asked to assist in the investigation by "search[ing] any open source social media that could be attributed to [Defendant]."  Tr. 15:13-18.  Officer Lokhorst located a Facebook account believed to be operated by Defendant under the vanity name "Da Real FatBoa."  Tr. 16:16-17:4; *see also* App. at 3-5.  Officer Lokhorst looked through the publicly available information, including photographs.  *See, e.g.*, Tr. 17:19-25, 18:20-25, 19:9-20:22; *see also* App. at 3-5.  While looking at the publicly available photographs, Officer Lokhorst located one that had been posted to "Da Real FatBoa's" account by another user on July 20, 2019.  Tr. 19:14-20:22, 23:21-24; *see* Ex. 1; Tr. 21:9-13; *see also* App. at 3-5.  The photograph depicted Defendant and another individual, with Defendant holding a black and silver handgun in his right hand.  Tr. 19:24-20:5; Ex. 1; *see* Tr. 24:13-20; *see also* App. at 3-5 to 4-5.  Officer Lokhorst compared this photograph to the photograph of the firearm recovered during Defendant's arrest and concluded it was the same firearm based on coloring, type, and other physical characteristics.  Tr. 22:23-23:11; *see also* App. at 3-5 to 4-5.  Officer Lokhorst preserved a screenshot of the Facebook photograph.  Tr. 24:13-20.

Officer Lokhorst then applied for a warrant to search the "Da Real FatBoa" Facebook account.  Tr. 24:13-22; *see generally* Ex. 2.  The application recounts, among

---

[4] For ease of reference, the Court uses the pagination of the individual "components" of the search warrant comprising Exhibit 2.

3

other things, the details of Defendant's arrest and Officer Lokhorst's search of public information on the "Da Real FatBoa" Facebook account, including a description of the picture of Defendant holding the handgun. App. at 3-5 to 4-5. The application also states that Defendant has two prior convictions making him ineligible to possess a firearm and he had been booked for possession of a firearm by an ineligible person. App. at 3-5.

The application went on to state:

> Your affiant knows from training and experience that information contained within a Facebook account often contains evidence that is useful in a criminal investigation. Your affiant believes that the contents of the above described Facebook accounts may contain information about the firearm recovered from [Defendant's] vehicle on February 5, 2020, and may assist investigators in proving ownership of the firearm.

App. at 4-5.

The application sought the following regarding the "Da Real FatBoa" Facebook account:

- Basic subscriber records, to include: name, length of service, credit card information, email address(es), phone number(s), and recent login/logout IP address(es), if available

- Message headers and IP addresses along with Port information

- Stored contents of account, to include messages, photos, videos, links to all videos, wall posts, status updates, friends lists, group lists, events, phone call information and location information.

App. at 1-5 to 2-5; *see also* Warrant at 1-3 to 2-3. The date range of the information sought was "07/01/2019 to date of compliance." App. at 1-5; *see also* Warrant at 1-3.

4

The warrant itself, although though mentioning it had been made upon an application, did not specifically incorporate the application by reference. *See* Warrant at 1-3 to 2-3. The warrant authorized the search of the requested information for the specified date range. Warrant at 1-3 to 2-3. The warrant itself contained no reference to Defendant's possession of firearms, nor was the information sought limited to the offense of unlawful possession of firearms. The warrant stated only that "[t]he property or things above described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime." Warrant at 2-3.

### III. CONCLUSIONS OF LAW

Based upon the foregoing findings, the undersigned Magistrate Judge makes the following conclusions of law. As stated above, the issue before the Court is whether the warrant to search the "Da Real FatBoa" Facebook account was overly broad and, if so, whether the good-faith exception applies.

**A. Legal Framework**

The Fourth Amendment protects "against unreasonable searches and seizures" and mandates "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend IV (emphasis added). "The manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see Andresen v. Maryland*, 427 U.S. 463, 479 (1976); *see also Payton v. New York*, 445 U.S. 573, 583 (1980) ("It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the

immediate evils that motivated the framing and adoption of the Fourth Amendment." (footnote omitted)); *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) ("Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings."). "Particularity prohibits the government from conducting general, exploratory rummaging of a person's belongings." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quotation omitted).

"To satisfy the particularity requirement of the Fourth Amendment, the items to be seized and places to be searched must be described with sufficient particularity as to enable the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005); *accord United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999); *see also, e.g.*, *Sigillito*, 759 F.3d at 923; *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010); *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007).

> By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Garrison*, 480 U.S. at 84 (footnote omitted); *see also Andresen*, 427 U.S. at 480; *Sigillito*, 759 F.3d at 923.

"The particularity requirement is a standard of practical accuracy rather than a

hypertechincal one." *Thurman*, 625 F.3d at 1057 (quotation omitted); *accord Summage*, 481 F.3d at 1079; *see also United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995) ("The standard is one of 'practical accuracy' recognizing that the specificity required hinges on the circumstances of each case."). "The degree of specificity required will depend upon the circumstances of the case and on the type of items involved." *Horn*, 187 F.3d at 788; *accord Summage*, 481 F.3d at 1079; *Lowe*, 50 F.3d at 607. "A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." *Horn*, 187 F.3d at 788. Ultimately, "[w]hether a warrant fails the particularity requirement cannot be decided in a vacuum. The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quotation omitted).

### B. Facebook Warrant

"Facebook collects a massive amount of information about its users." *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *3 (E.D. Ky. Aug. 30, 2019) (describing this as "common knowledge"), *report and recommendation adopted*, 2019 WL 4452828 (E.D. Ky. Sept. 17, 2019); *see also United States v. Shipp*, 392 F. Supp. 3d 300, 308 (E.D. N.Y. 2019) ("Users not only voluntarily entrust information concerning just about every aspect of their lives to the service, but Facebook also proactively collects and aggregates information about its users and non-users in ways that we are only just beginning to understand."). "Facebook is *designed* to replicate,

record, and facilitate personal, familial, social, professional, and financial activity and networks." *Shipp*, 392 F. Supp. 3d at 308; *accord United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *8 (N.D. Ia. Feb. 6, 2020). And, "when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data." *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017); *see United States v. Purcell*, 967 F.3d 159, 181 (2d Cir. 2020) (describing "non-traditional manner" in which Facebook warrant "functioned as a hybrid between a warrant, in that it set forth terms for the search and seizure of evidence based on probable cause, and a subpoena, in that it directed a private third party to supply specified material to law enforcement to assist with its investigation."), *cert. filed*, No. 20-7482 (U.S. Mar. 12, 2021).

As an initial matter, the Court notes that Defendant has not asserted that the warrant failed to establish probable cause that evidence of Defendant's firearm possession could be found on the "Da Real FatBoa" Facebook account. Defendant contends, rather, that the warrant was not sufficiently limited to information related to the crime being investigated—possession of a firearm by an ineligible person—and instead swept too broadly as to all of the specified categories of information from the "Da Real FatBoa" Facebook account, not just that information related to Defendant's possession of firearms.

The Government asserts that the instant warrant "is akin to the warrant approved in *United States v. Charles*," No. 16-cr-065 (JNE/FLN) (D. Minn.). Gov't's Opp'n at 4, ECF No. 50. The Facebook warrant in *Charles* was also challenged as being

8

constitutionally overbroad. 2016 WL 5939333, at *3 (D. Minn. Oct. 12, 2016) [hereinafter *Charles II*]. "The affidavit in support of the . . . [w]arrant discussed, among other things, the officer's review of messages exchanged on Facebook between [the defendant] and a juvenile girl that appeared to be evidence of sex trafficking, and information about a second girl who was allegedly a sex trafficking victim in a separate police investigation of [defendant] and who appeared to be communicating with [the defendant] via [F]acebook." *Id.* (quotation omitted); *see also United States v. Charles*, No. 16-cr-065 (JNE/FLN), 2016 WL 11486900, at *3-4 (D. Minn. Aug. 11, 2016), *report and recommendation adopted in part and rejected in part*, *Charles II*, 2016 WL 5939333 (D. Minn. Oct. 12, 2016). Like the warrant here, the warrant in *Charles* was "for categories of information (*e.g.*, status updates, Wall postings, comments and messages)." *Id.* at *3. Noting that the warrant was "for a specified, fairly narrow period of time close in time to the Facebook activity that the officer had viewed," the district judge held that "it was a fair inference that evidence of sex trafficking would be found in the requested records, and the warrant was not facially overbroad." *Id.* *Charles* did not, however, address the issue of whether the warrant was sufficiently limited to information related to the crime being investigated.

Defendant contrasts the instant warrant with the Facebook warrant at issue in *United States v. Jones*, No. 19-cr-341 (NEB/TNL) (D. Minn.). Again, similar to the warrant here and the warrant in *Charles*, the *Jones* warrant sought large categories of information including contact and personal identifying information, location information, messages, photos, videos, "friends" lists, and the payment method used. 2021 WL

9

1321270, at *6 (D. Minn. Jan. 7, 2021) [hereinafter *Jones I*], *report and recommendation accepted*, 2021 WL 960910 (D. Minn. Mar. 15, 2021) [hereinafter *Jones II*]. But, the application for the *Jones* warrant limited the seizure of the requested information to "[a]ll information . . . that constitute[d] fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 113(a)(7) (Assault Resulting in Substantial Bodily Injury)" for an approximately one-year period prior to the date of the offense. *Id.*

The *Jones* warrant was challenged as being overly broad "because it merely listed 16 distinct categories to be searched, including any 'likes' or 'pokes' [the d]efendant ha[d] ever made and [the d]efendant's activity on 'Facebook Marketplace' which [the d]efendant describe[d] as having no relation to the . . . [offense at issue], and . . . contained no time limitations." *Id.* at *11 (quotation omitted). The magistrate judge recommended that the motion to suppress be denied:

> Although the November 26, 2019, Search Warrant authorizing the search of Defendant's Facebook account contained categories of information to be produced by Facebook, those categories were specifically defined and the Search Warrant incorporated "Attachment B" which specifically limited the items to be seized to information "that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 113(a)(7) (Assault Resulting in Substantial Bodily Injury), involving [Defendant], or other potential suspects, during the period of September 3, 2018 to the present . . . ."

*Id.* at *12 (alteration in original) (citation omitted). The magistrate judge concluded that this "limiting language" was consistent with Eighth Circuit precedent regarding the Fourth Amendment's particularity requirement and "provide[d] a constitutionally adequate basis to allow law enforcement officers searching Defendant's Facebook

10

account to avoid searching and seizing the wrong information." *Id.*

It was also argued that the warrant swept too broadly because "the delineated categories to be searched . . . include[d] information outside of the information to be seized which may not be relevant to the investigation underlying the present case and . . . were not temporally limited." *Id.* The magistrate judge was similarly unpersuaded. The magistrate judge reasoned that the Eighth Circuit "has repeatedly stated that '[t]he failure of the warrant to anticipate the precise form in which [the sought information] would appear is not fatal.'" *Id.* (alteration in original) (footnote omitted) (quoting *Lowe*, 50 F.3d at 607). Further, the subject Facebook account was "sufficiently described" to "preclude[] mistakenly searching the wrong Facebook account" and the warrant "delineated the items to be included in the search." *Id.* at *13.

In accepting the magistrate judge's report and recommendation, the district judge held:

> The warrant to search [the defendant's] Facebook account was sufficiently particular. It identified specific categories of information to be searched and seized, and it permitted seizure of data from a relatively narrow time window. Using general categories of information to search was permissible because officers could not have known *ex ante* what information they would find on [the defendant's] Facebook account. Enumerating the categories of information to be searched allowed police to avoid searching the wrong items. Additionally, the warrant only permits officers to seize information that 'constitutes fruits, evidence, and instrumentalities' of one of the charged offenses, and only for a fourteen-month period—the time during which [the defendant] was allegedly romantically involved with the victim.

*Jones II*, 2021 WL 960910, at *4 (citations omitted).

11

The district judge also concluded that, even if the warrant "were overbroad, the evidence obtained pursuant to it should not be suppressed, because the officers acted in good faith." *Id.* "The warrant to search [the defendant's] Facebook account did not fail to particularize the place to be searched or the things to be seized to a degree that would render it so facially deficient that the executing officers could not have reasonably presumed it to be valid." *Id.* (quotation omitted). "To the contrary, the warrant enumerated the categories of information to be searched and limited the information to be seized to a certain period of time." *Id.*

The Government acknowledges that the warrant to search the "Da Real FatBoa" Facebook account "did not contain similar limiting language" by which the "items to be seized [were limited] to information that constitute[d] fruits, evidence and instrumentalities of the offense." Gov't's Opp'n at 5 (quotation omitted). The Government contends, however, that the district judge in *Jones* "did not place as much emphasis on the limiting language," describing it as "an additional factor to be considered." Gov't's Opp'n at 6.

Courts have struggled with the bounds of the Fourth Amendment's particularity requirement when it comes to searches of social-media accounts, particularly Facebook. *See, e.g.*, *Burkhow*, 2020 WL 589536, at *9 (discussing cases); *see also, e.g.*, *Purcell*, 967 F.3d at 177-84; *Blake*, 868 F.3d at 973-75; *United States v. Ulbricht*, 858 F.3d 71, 99-104 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018); *United States v. Flores*, 802 F.3d 1028, 1044-46 (9th Cir. 2015); *United States v. Vogelbacher*, No. 1:20-CR-00098-LJV-MJR, 2021 WL 1017126, at *2-6 (W.D.

N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 978848 (W.D. N.Y. Mar. 15, 2021); *United States v. Mize*, No. 1:18-cr-74, 2020 WL 5505793, at *4-5 (S.D. Ohio Sept. 11, 2020); *United States v. Chavez*, 423 F. Supp. 3d 194, 206-08 (W.D. N.C. 2019); *Hamilton*, 2019 WL 4455997, at *3-7; *Shipp*, 392 F. Supp. 3d at 306-12; *United States v. Irving*, 347 F. Supp. 3d 615, 623-26 (D. Kan. 2018) ; *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL 3448161, at *9-17 (D. Conn. July 17, 2018).

The presence (or absence) of any temporal limitations on the broad categories of information sought are frequently the focus. *See, e.g.*, *Jones II*, 2021 WL 960910, at *4; *Charles*, 2016 WL 5939333, at *3; *see also, e.g.*, *Blake*, 868 F.3d at 966-67, 974; *Flores*, 802 F.3d at 1044-46; *Mize*, 2020 WL 5505793, at *5; *Burkhow*, 2020 WL 589536, at *10; *Chavez*, 423 F. Supp. 3d at 206-07; *Shipp*, 392 F. Supp. 3d at 310; *Irving*, 347 F. Supp. 3d at 624; *Westley*, 2018 WL 3448161, at *15-16.

At the same time, in determining whether the Fourth Amendment's particularity requirement had been met, courts have also regularly focused on whether the warrant limited the information seized to the crime being investigated. *See, e.g.*, *Jones II*, 2021 WL 960910, at *4; *see also, e.g.*, *Purcell*, 967 F.3d at 178-84; *Ulbricht*, 858 F.3d at 99-104; *Flores*, 802 F.3d at 1044-45; *Vogelbacher*, 2021 WL 1017126, at *4-6; *Westley*, 2018 WL 3448161, at *11-14.  The presence of such limiting language cuts in favor of the particularity requirement being satisfied. *See, e.g.*, *Jones II*, 2021 WL 960910, at *4; *see also, e.g.*, *Ulbricht*, 858 F.3d at 104; *Flores*, 802 F.3d at 1044-45; *Westley*, 2018 WL 3448161, at *13-14.  At least one court has found that the absence of such limiting language renders the warrant constitutionally deficient. *Purcell*, 967 F.3d at 180.

In considering whether a warrant "authorized an improper general 'exploratory' search," the Eighth Circuit has also looked to whether the offense being investigated was sufficiently identified in the warrant. *See, e.g.*, *In re Grand Jury Proceedings*, 716 F.2d 493, 497-99 (8th Cir. 1983); *see also, e.g.*, *United States v. Dockter*, 58 F.3d 1284, 1288 (8th Cir. 1995)*; Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987); *cf. United States v. Saddler*, No. 4:19-CR-40109-KES, 2020 WL 7130693, at *7-10 (D. S.D. Sept. 10, 2020), *report and recommendation adopted as modified*, 2020 WL 6255652 (D. S.D. Oct. 23, 2020) [hereinafter *Saddler II*], *appeal filed*, No. 21-1884 (8th Cir. Apr. 21, 2021). For example, in *United States v. Nieman*, the Eighth Circuit found that there was a "specific limitation" on the description of the property to be seized when the warrant described the property as "evidence of the illegal possession, use, possession with intent to deliver, or delivery of controlled substances; or shows an association of individuals involved in the illegal possession, use, possession with intent to deliver, or delivery of controlled substance[s]." 520 F.3d 834, 839 (8th Cir. 2008).

Furthermore, "[t]he Fourth Amendment requires particularity in the warrant, not supporting documents like an application or affidavit." *Sigillito*, 759 F.3d at 923-24 (citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). Thus, the fact that the application to search the "Da Real FatBoa" Facebook account referenced the offense of possession of a firearm by an ineligible person is of no moment when the warrant itself did not use words of incorporation and it is not clear the application accompanied the warrant. *See Groh*, 540 U.S. at 557; *see also United States v. Szczerba*, 897 F.3d 929, 937 (8th Cir. 2018); *United States v. Hamilton*, 591 F.3d 1017, 1024-27 (8th Cir. 2010).

In the end, the Court need not decide whether the warrant to search the "Da Real FatBoa" Facebook failed to satisfy the Fourth Amendment's particularity requirement because, for the reasons that follow, the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984), applies.

### C. *Leon* Good-Faith Exception

"Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." *Hamilton*, 591 F.3d at 1027 (citing *Herring v. United States*, 555 U.S. 135, 140 (2009)); *accord Szczerba*, 897 F.3d at 937. The Supreme Court "ha[s] repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring*, 555 U.S. at 141.

In *Leon*, the Supreme Court "held that the exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant, even if the warrant is later invalidated." *United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (quotation omitted); *see Leon*, 468 U.S. at 913-22. "The good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *Dickerman*, 954 F.3d at 1065 (quotation omitted). An officer's reliance on a search warrant is unreasonable—and *Leon*'s good-faith exception does not apply—when:

> (1) the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

15

      (2) the issuing judge wholly abandoned his judicial role in issuing the warrant;

      (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

      (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Id.* (quotation and emphasis omitted); *see Leon*, 468 U.S. at 922-23.

Defendant argues that *Leon*'s good-faith exception does not apply under the fourth scenario. According to Defendant, because Officer Lokhorst drafted both the application and the warrant to search the "Da Real FatBoa" Facebook account, *see* Tr. 24:13-22, he therefore should have been aware of the warrant's overbreadth and "it cannot be said that he acted in objective reasonable reliance on the state court judge's language defining the scope of the warrant." Def.'s Mem. in Supp. at 8. Defendant argues that "Officer Lokhorst certainly should have known that a general warrant which authorized looking through all of the data in the ["Da Real FatBoa"] Facebook account without any subject limits lack[s] the particularity required by the Fourth Amendment." Def.'s Mem in Opp'n at 9.

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144; *accord Davis v. United States*, 564 U.S. 229, 240 (2011); *see Szczerba*, 897 F.3d at 937-38. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in

16

some circumstances recurring or systemic negligence," *Herring*, 555 U.S. at 144, not "to suppress evidence obtained as a result of nonculpable, innocent police conduct," *Davis*, 564 U.S. at 240; *see Szczerba*, 897 F.3d at 938.

As stated in *Burkhow*, "[g]ood faith is often present despite the overbreadth of a warrant to search a social media profile." 2020 WL 589536, at *11; *see Mize*, 2020 WL 5505793, at *5 ("Although the Sixth Circuit has not yet addressed this precise issue, courts across the nation have analyzed the constitutionality of nearly identical Facebook search warrants. Based on this case law, an apparent pattern has emerged: search warrants that ask for an entire copy of a Facebook account, such as the one at issue here, are likely overbroad, but evidence obtained therefrom is still admissible under the *Leon* good-faith exception."); *see, e.g.*, *Purcell*, 967 F.3d at 182-84; *Blake*, 868 F.3d at 974-75; *Jones II*, 2021 WL 960910, at *4; *Vogelbacher*, 2021 WL 1017126, at *5-6; *Mize*, 2020 WL 5505793, at *5; *Burkhow*, 2020 WL 589536, at *11-12; *Chavez*, 423 F. Supp. 3d at 207-08; *Hamilton*, 2019 WL 4455997, at *5-7; *Shipp*, 392 F. Supp. 3d at 311-12; *Westley*, 2018 WL 3448161, at *16-17. *But see Irving*, 347 F. Supp. 3d at 624-26. "The extent to which social media profiles can be searched is an evolving issue, particularly now that many people have retained such profiles for years . . . [and] courts have differed on the limitations required by search warrants and what limitations are appropriate under the circumstances." *Burkhow*, 2020 WL 589536, at *12; *see Chavez*, 423 F. Supp. 3d at 208 ("But applying the Fourth Amendment to social media accounts is a relatively unexplored area of law with nuances that have yet to be discovered."); *Westley*, 2018 WL 3448161, at *17 ("[T]he application of search warrants to Facebook accounts is a

17

relatively new area of the law.").

Relatedly, in *Purcell*, and subsequently *Vogelbacher*, the courts determined that the structure and manner in which Facebook warrants are executed, as a "hybrid of a traditional warrant and a subpoena," "rendered the specification of the suspected offense, while constitutionally indispensable, functionally unnecessary."  *Purcell*, 967 F.3d at 183; *see Vogelbacher*, 2021 WL 1017126, at *5.  As explained in *Purcell*,

> Because the [warrant] called for Facebook, Inc. to turn over specified information without first culling the information itself, the scope of Facebook's "search" and its identification of the items to be seized were not tethered to its cognizance of the suspected criminal conduct.  [Law enforcement] obtained the same data from the "Mike Hill" Facebook account that it would have obtained if the warrant had complied with the Fourth Amendment's particularity requirement by specifying the relevant offense.

967 F.3d at 182; *see Vogelbacher*, 2021 WL 1017126, at *5 ("Finally, the omission of the specific offense defendant is alleged to have committed[] does not actually appear to have given rise to a less particularized search or seizure of evidence.").

The Court finds that Officer Lokhorst reasonably believed he had authority to seize the requested information for the "Da Real FatBoa" account from Facebook.  First, both the application and the warrant specified the information to be seized subject to a temporal limitation, but just the warrant failed to indicate the offense being investigated.  *See Szczerba*, 897 F.3d at 938-39; *Saddler II*, 2020 WL 6255652, at *5-6; *see also Purcell*, 967 F.3d at 180-81; *Vogelbacher*, 2021 WL 1017126, at *4; *cf. Jones II*, 2021 WL 960910, at *4.  Thus, "[w]hile the warrant authorized officers to search and seize . . . categories of Facebook data, each of which potentially encompassed a large volume of

18

information, it identified the kinds of data subject to seizure with specificity," thereby "limit[ing] the kind of evidence sought and . . . not leav[ing] decisions over which data to seize entirely to the discretion of those officials conducting the search." *Purcell*, 967 F.3d at 180 (quotation omitted); *see Jones II*, 2021 WL 960910, at *4; *see also Gleich*, 397 F.3d at 611; *Horn*, 187 F.3d at 788.

Second, the warrant referred to, but did not expressly incorporate the application. *See Szczerba*, 897 F.3d at 938-39; *Saddler II*, 2020 WL 6255652, at *5-6. Third, the application articulated probable cause to believe evidence of unlawful possession of firearms by Defendant would be found within the "Da Real FatBoa" Facebook account and the warrant was signed by a state-court judge. *See Szczerba*, 897 F.3d at 938-39; *Saddler II*, 2020 WL 6255652, at *5-6; *see also Purcell*, 967 F.3d at 181; *Vogelbacher*, 2021 WL 1017126, at *3. Lastly, despite the omission of the specific offense for which Defendant was being investigated in the warrant itself, there was no appreciable practical effect on the warrant's sweep due to the manner in which Facebook warrants are executed. *See Purcell*, 967 F.3d at 183; *Vogelbacher*, 2021 WL 1017126, at *5. Accordingly, the Court concludes that *Leon*'s good-faith exception applies to the evidence obtained from the "Da Real FatBoa" Facebook account.

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence from Searches of Facebook Account, ECF No. 33, be **DENIED**.

Date: July   16   , 2021

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*United States v. Harris*
Case No. 20-cr-98 (SRN/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.