## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **File No. 20-CR-98 (SRN/TNL)** |
| **Plaintiff,** | |
| | **ORDER ADOPTING R&R** |
| **v.** | |
| **Damonte Jerome Lavell Harris,** | |
| **Defendant.** | |

---

Thomas Calhoun-Lopez, United States Attorney's Office, 300 South 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Frederick J. Goetz, Goetz & Eckland PA, 615 1st Ave. NE, Ste. 425, Minneapolis, MN 55413, for Defendant

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objection [Doc. No. 54] filed by Defendant Damonte Jerome Lavell Harris to Magistrate Tony N. Leung's July 16, 2021 Report and Recommendation ("the R&R") [Doc. No. 51].  In the R&R, Magistrate Judge Leung recommended that Defendant's Motion to Suppress Evidence from Searches of Facebook Account [Doc. No. 33] be denied.  For the reasons set forth below, Defendant's Objection is overruled, and the Court adopts the R&R.

## I.    BACKGROUND

### A.  Factual Background

Harris is charged in a one-count indictment with unlawful possession of a firearm by a convicted felon.  (Indictment [Doc. No. 1].)  On February 5, 2020, police officers in Saint

Paul, Minnesota received a report of a vehicle possibly involved in narcotics activity. (Gov't Ex. 2 (App.) at 2–3.[1]) Upon arriving at the scene, officers approached a parked vehicle occupied by two people. (*Id.*) When officers attempted to speak to the driver, later identified as Harris, he attempted to drive away, but was unable to do so because of icy road conditions. (*Id.* at 2.) When Harris eventually opened the car door, officers observed an open liquor bottle, smelled marijuana, and also saw the handle of a black and silver semi-automatic 9mm handgun sticking out from underneath the driver's seat. (*Id.*; R&R at 2–3.) Officers photographed and recovered the firearm. (R&R at 3.) Because the officers determined that both Harris and the vehicle's passenger had prior felony convictions, they arrested them both for unlawful possession of a firearm. (Gov't Ex. 2 (App.) at 3.)

Saint Paul Police Officer Robert Lokhorst was not involved in Defendant's arrest, but subsequently participated in the investigation by conducting a search on February 6, 2020 of any "open source" social media content that could be attributable to Harris. (R&R at 3; Gov't' Ex. 2 (App.) at 2.) Officer Lokhorst explained at the hearing on the instant motion that "open source" social media refers to publicly available social media content. (May 4, 2021 Hr'g Tr. [Doc. No. 48] at 16.) He testified that in firearms cases, officers often search open source social media, where they frequently find photographs, videos, posts, or other content linking a suspect to the possession of a firearm. (*Id.* at 15.) When Officer Lokhorst conducted his open source social media search with respect to Harris, he found a Facebook account believed

---

[1] The Court's citations to the Government's exhibits refer to the exhibits admitted at the May 4, 2021 hearing on Defendant's Motion to Suppress. (*See* May 4, 2021 Hr'g Tr. [Doc. No. 48] at 2.)

to have been operated by Harris under the vanity username "Da Real FatBoa."[2]  (R&R at 3.)
The account contained a user profile photograph that appeared be of Harris, as well as a few
other publicly available photographs, and a birthdate that nearly matched Defendant's
birthday, although it differed by one year. (May 4, 2021 Hr'g Tr. at 17–18.)  Officer Lokhorst
testified that in his experience, it is not uncommon for social media users to provide their
correct month and date of birth on social media, but to provide an alternate year of birth in
order to preserve some measure of anonymity. (*Id*. at 18.)

While reviewing the publicly available photographs on "Da Real FatBoa" Facebook
account, Officer Lokhorst found a photograph posted to that account by another user,
depicting Harris with another person. (R&R at 3.)  In the photograph, the person whom
Officer Lokhorst believed to be Harris held a black and silver handgun in his right hand. (*Id*.)
Officer Lokhorst compared this photograph to the photograph of the firearm recovered during
Defendant's arrest, and believed that it was the same firearm based on similarities in coloring,
gun type, and other physical characteristics. (*Id*.)  Officer Lokhorst preserved a screenshot of
the Facebook photograph. (*Id*.)

On February 24, 2020, Officer Lokhorst applied for a search warrant to search "Da
Real FatBoa" Facebook account for information beyond the publicly available content.[3] (*Id*.)
In the application for the warrant, Officer Lokhorst described the circumstances of

---

[2]      Harris does not appear to contest that he operated this Facebook account.

[3]      In the same application, Officer Lokhorst also sought Facebook information related
to the separate account of J.B., the passenger in the vehicle driven by Harris. (Gov't Ex. 2
(App.) at 3.)

Defendant's arrest and the seizure of the firearm.  (Gov't Ex. 2 (App.) at 3.)  He further

described the photograph posted to Defendant's publicly available Facebook account,

depicting Harris with a handgun at his side that matched the features of the seized firearm.

(*Id.*)  Officer Lokhorst stated:

> Your affiant knows from training and experience that information contained
> within a Facebook account often contains evidence that is useful in a criminal
> investigation.  Your affiant believes that the contents of the above described
> Facebook accounts may contain information about the firearm recovered from
> [Defendant's] vehicle on February 5, 2020, and may assist investigators in
> proving ownership of the firearm.

(*Id.* at 5.)

The application and warrant sought the following information regarding the Facebook

account:

- Basic subscriber records, to include:  name, length of service, credit card
  information, email address(es), phone number(s), and recent login/logout
  IP address(es), if available

- Message headers and IP addresses along with Port information

- Stored contents of account, to include messages, photos, videos, links to all
  videos, wall posts, status updates, friends list, group lists, events, phone call
  information and location information

(*Id.* (Warrant) at 2–3; *id.* (App.) at 1–2.)  The date range for the requested information was

from July 1, 2019 to the date of submission of the warrant. (*Id.* (Warrant) at 1; *id.* (App.) at

1.)

Although the warrant stated that it was made upon an accompanying application, it did

not specifically incorporate the application by reference.   (R&R at 5) (citing Gov't Ex. 2

(Warrant) at 1–2 (stating, "Whereas, the application of Robert Lokhorst was duly presented

4

and read by the Court[.]").  The warrant itself contained no reference to the firearms offense under investigation, nor was the requested information limited to information regarding firearms.  The warrant stated that "[t]he property or things above described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime."  (Gov't Ex. 2 (Warrant) at 2.)  The application was submitted on February 24, 2020 and was approved by Ramsey County District Judge Paul Yang the same day.  (*Id*. at 3.)

### B.  Defendant's Motion to Suppress

Defendant moves to suppress the evidence seized from the warrant-authorized search of his Facebook account, arguing that the search warrant violated the Fourth Amendment. (Def.'s Mem. [Doc. No. 49] at 2–7.)  Specifically, he contends that the warrant was overly broad, as it was not tailored to the seizure of information relevant to the possession of a firearm.  (*Id*.)  In addition, Harris asserts that the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 922 (1984), is inapplicable because the warrant was so facially deficient that the executing police officer could not reasonably presume it to be valid.  (Def.'s Mem. at 7–9.)

The Government disagrees.  It argues that the warrant was sufficiently particular and not overly broad.  (Gov't's Opp'n [Doc. No. 50] at 4–6.)  In addition, the Government contends that even if the warrant was overly broad, Officer Lokhorst relied on it in good faith, and under *Leon*, the evidence seized pursuant to the warrant should not be excluded.  (*Id*. at 6–7.)

5

### C. R&R

In the R&R, Magistrate Judge Leung analyzed the developing legal authority involving Facebook searches, observing that "[c]ourts have struggled with the bounds of the Fourth Amendment's particularity requirement when it comes to searches of social-media accounts, particularly Facebook."   (R&R at 7–15) (citations omitted).   He noted the Government's acknowledgement that the Facebook warrant here lacks the specific "language by which the items to be seized [were limited] to information that constitute[d] fruits, evidence, and instrumentalities of the offense."   (*Id.* at 12) (citing Gov't's Opp'n at 5).   Further, Magistrate Judge Leung observed that the Fourth Amendment's particularity requirement "requires particularity in the warrant, not supporting documents like an application or affidavit."   (*Id.* at 14) (quoting *United States v. Sigillito*, 759 F.3d 913, 923–24 (8th Cir. 2014)).   Ultimately, however, the magistrate judge found it unnecessary to decide whether the Facebook search met the Fourth Amendment's particularity requirements because the good-faith exception to the Fourth Amendment's exclusionary rule applies.   (*Id.* at 15–20.)   Accordingly, Magistrate Judge Leung denied Defendant's suppression motion.

Harris objects to the magistrate judge's recommendation.   He reasserts that the scope of the Facebook search warrant was overly broad, because it contained "virtually no limits" on the evidence that investigating officers could search and seize.   (Def.'s Obj. at 8.) Consequently, Harris asks this Court to find that the search warrant violated the Fourth Amendment.   (*Id.* at 11–12.)   In addition, Harris takes issue with Magistrate Judge Leung's finding that the good-faith exception to the exclusionary rule applies, arguing that the warrant was so facially deficient that no police officer could reasonably presume it to be valid.   (*Id.* at

12–14.)  Therefore, Harris asks the Court to grant his Motion to Suppress and not adopt the R&R.

## II.    DISCUSSION

The district court reviews the magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects.  28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### A. Good Faith

The Fourth Amendment protects against unreasonable searches and seizures and requires search warrants to be supported by probable cause and to "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  When evidence is obtained in violation of the Fourth Amendment, it may be suppressed pursuant to the exclusionary rule.  *Leon*, 468 U.S. at 906.  The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."  *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

In *Leon*, the Supreme Court held that when evidence is obtained by officers reasonably relying on a search warrant, the good-faith exception to the exclusionary rule may apply.  *Id.* at 922–23.  Under the good-faith exception, "disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant."  *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (internal citation omitted).  The suppression of evidence obtained from a warrant is determined on a case-by-case basis.  *Leon*,

468 U.S. at 918. "[T]he fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation omitted). The Supreme Court has opined that "the threshold for establishing [that *Leon* does not apply] is a high one, and it should be." *Leon*, 468 U.S. at 923.

The Court agrees with Magistrate Judge Leung that it need not rule on whether the warrant meets the Fourth Amendment's particularity requirement, (*see* R&R at 15), and for purposes of analysis, assumes without deciding that the warrant was overly broad. *See United States v. Pospisal*, __ Fed. App'x __, 2021 WL 3046580, at *2 (8th Cir. July 20, 2021) (noting that for purposes of the appeal, the court would assume without deciding that the defendant's cell phone was beyond the scope of the warrant, and would turn directly to the good-faith exception to the exclusionary rule); *United States v. Willis-Dass*, No. 17-cr-280 (PJS/FLN), 2018 U.S. Dist. LEXIS 35673, at *5 (D. Minn. Mar. 1, 2018) (assuming without deciding that the Facebook search warrant lacked probable cause and was overly broad, the Court concluded that the good-faith exception applied); *see also United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("[W]e need not decide whether the Facebook warrants violated the Fourth Amendment because, even if they did, the district court did not err in allowing the government to use evidence gathered as a result of them" under the good-faith exception). The Court therefore turns to whether the good-faith exception to the exclusionary rule applies.

In *Leon*, the United States Supreme Court identified four circumstances in which the good faith exception does not apply. 468 U.S. at 922–23. Harris relies on the fourth

circumstance: when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid. *Id.*

The magistrate judge properly focused on whether the warrant was sufficiently particular, as opposed to whether the application was sufficiently particular. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). As noted, the Facebook warrant did not specify the offense in question, although the application did. (Gov't Ex. 2 (App.) at 3–4.) Nor did the warrant expressly incorporate the application by reference, stating instead, "Whereas, the application of Robert Lokhorst was duly presented and read by the Court, and being fully advised in the premises . . . ." (*Id.* (Warrant) at 2.) In *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990), the same language was present in a warrant at issue, to which the court applied the *Leon* good-faith exception. *Id.* Here, Harris argues that Officer Lokhorst should have been aware of the warrant's overbreadth because he drafted both the application and search warrant. (Def.'s Obj. at 13.) However, in *Curry*, the Eighth Circuit found that such facts actually *favored* the application of the *Leon* good-faith exception, explaining,

> The search was directed by Detective Swanson, the officer who prepared the application and the affidavit. This fact is significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed.

911 F.2d at 78 (citations omitted); *see also United States v. Purcell*, 967 F.3d 159, 182–84 (2d Cir. 2020) (finding that good-faith exception applied to Facebook search conducted pursuant to a warrant that omitted the specific offense for which probable cause existed, although application contained such information, since the officers who reviewed the

produced information likely "included those already involved in the investigation into [the defendant's] suspected sex-trafficking offenses, who had also participated in the drafting of the warrant application materials. Thus, those officers were in all likelihood fully aware of the purpose and parameters of the investigation, and we have no reason to think that their analysis was affected by the warrant's failure to specify the suspected offense.").

As in *Curry*, Officer Lokhorst drafted the application and search warrant, and after he obtained the Facebook search warrant and received the requested materials, he analyzed them. (May 4, 2021 Hr'g Tr. at 24–25; 31–32.)   Officer Lokhorst knew that the scope of his subsequent analysis was for "information about the firearm recovered from [Defendant's] vehicle," which might assist investigators in proving the ownership or possession of the gun. (Gov't Ex. 2 (App. at 4).)   Thus, he was "fully aware of the purpose and parameters of the investigation," *see Purcell*, 967 F.3d at 182, and there is no evidence here to suggest that he failed to act in good faith, *see Curry*, 911 F.2d at 78, or that his analysis was somehow skewed by the warrant's failure to refer to gun-specific evidence.[4]

Moreover, excluding the evidence here would not serve the purpose of the exclusionary rule.  As Magistrate Judge Leung observed, "[t]o trigger the exclusionary rule," the law enforcement conduct in question "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by

---

[4]     In fact, there appears to be nothing in the record showing what evidence Officer Lokhorst's post-warrant analysis yielded.  (*See* May 4, 2021 Hr'g Tr. at 24–25) ("Q:  Now, once you got the warrant, did you conduct another review of Mr. Harris's Facebook account? A:  I did.  I do not recall—I don't recall what I observed when I looked through that.").

the justice system." (R&R at 16) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)); *see also Davis v. United States*, 564 U.S. 229, 240 (2011); *United States v. Szczerba*, 897 F.3d 929, 937–38 (8th Cir. 2018). Because the "sole purpose" of the exclusionary rule is to deter future Fourth Amendment violations, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 564 U.S. at 236–38 (internal citations and quotations omitted).

Here, lacking any evidence of deliberate misconduct or gross negligence in the record, Harris points to the failure of the Facebook warrant to recite or expressly incorporate the same gun-related scope as found in the application. Suppressing the results of the Facebook search would not further the purpose of the exclusionary rule. *Id*. at 238–39. It would only serve to punish a police officer for relying on a neutral judge's conclusion that the warrant was sufficiently particular. *See Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."). Under these facts, the warrant here is "distinguishable from the type of warrant that was so clearly overbroad that officers should have known it themselves and that they could not rely on the judge's assessment." *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *12 (N.D. Iowa Feb. 6, 2020).

In addition, searches of social media accounts are a relatively new development in Fourth Amendment law, as courts have observed: "The extent to which social media profiles can be searched is an evolving issue, particularly now that many people have retained such

11

profiles for years . . . [and] courts have differed on the limitations required by such warrants and what limitations are appropriate under the circumstances." *Id.*; *see also United States v. Chavez*, 423 F. Supp. 3d 194, 208 (W.D.N.C. 2019) ("[A]pplying the Fourth Amendment to social media accounts is a relatively unexplored area of law with nuances that have yet to be discovered."); *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL 3448161, at *17 (D. Conn. July 17, 2018) ("[T]he application of search warrants to Facebook accounts is a relatively new area of the law."). In this context, our sister court in the Northern District of Iowa stated in *Burkhow*, 2020 WL 589536, at *11, that "[g]ood faith is often present despite the overbreadth of a warrant to search a social media profile." *See also United States v. Mize*, No. 1:18-cr-74, 2020 WL 5505793, at *5 (S.D. Ohio Sept. 11, 2020) ("[C]ourts across the nation have analyzed the constitutionality of nearly identical Facebook search warrants. Based on this case law, an apparent pattern has emerged: search warrants that ask for an entire copy of a Facebook account, such as the one at issue here, are likely overbroad, but evidence obtained therefrom is still admissible under the *Leon* good-faith exception.") (citing *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *4–6 (E.D. Ky. Aug. 30, 2019) (applying good-faith exception to search warrant for ten months of activity on entire Facebook account); *Blake*, 868 F.3d at 974 (finding that good-faith exception applied to Facebook warrant that was likely overbroad); *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015) (same); *United States v. Shipp*, 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019) (same); *Chavez*, 423 F. Supp. 3d at 207–08 (finding that Facebook warrant violated Fourth Amendment, but good-faith exception applied)); *but see United States v. Irving*, 347 F. Supp. 3d 615, 624–26 (D. Kan. 2018) (finding good-faith exception inapplicable where Facebook

search warrant affidavit did not limit the scope of the search and reflected "the broad view that the officer took of the search warrant.").

Because the degree of particularity required under the Fourth Amendment is dependent upon the facts of the case and the type of items involved, a warrant identifying only a general class of items may be sufficiently particular if the individual items to be seized cannot be identified at the time the warrant is issued. *United States v. Jones*, No. 19-cr-341 (NEB/LIB), 2021 WL 960910, at *4 (D. Minn. Mar. 15, 2021) (citing *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). In the R&R, Judge Leung noted the specific structure and manner in which Facebook warrants are executed, with some courts finding them to be a "hybrid of a traditional warrant and a subpoena," that can "render[] the specification of the suspected offense, while constitutionally indispensable, functionally unnecessary." (R&R at 18) (citing *Purcell*, 967 F.3d at 183). As the court in *Purcell* explained,

> Because the September 2017 Warrant called for Facebook, Inc. to turn over specified information without first culling the information itself, the scope of Facebook's "search" and its identification of the items to be seized were not tethered to its cognizance of the suspected criminal conduct. The [New York District Attorney's Office] obtained the same data from the "Mike Hill" Facebook account that it would have obtained if the warrant had complied with the Fourth Amendment's particularity requirement by specifying the relevant offense.

967 F.3d at 182; *see also United States v. Vogelbacher*, No. 1:20-CR-98-LJV-MJR, 2021 WL 1017126, at *5 (W.D.N.Y. Feb. 2, 2021) ("Finally, the omission of the specific offense defendant is alleged to have committed[] does not actually appear to have given rise to a less particularized search or seizure of evidence.").

Similarly, in this District, the court in *Jones* addressed the practical realities of a Facebook search warrant, placing less emphasis on the presence of limiting language in the warrant:

> The warrant to search Jones's Facebook account was sufficiently particular.  It identified specific categories of information to be searched and seized, and it permitted seizure of data from a relatively narrow time window.  Using general categories of information to search was permissible because officers could not have known *ex ante* what information they would find on Jones's Facebook account. Enumerating the categories of information to be searched allowed police to avoid searching the wrong items.

2021 WL 960910, at *3.  The court added that the warrant's limiting language was an additional factor to be considered.  *Id.*

The Court agrees with the magistrate judge that under the facts here, Officer Lokhorst reasonably believed that he had the authority to seize the requested information for "Da Real FatBoa" account from Facebook, (R&R at 18–19), and the warrant was not so facially deficient that no officer could reasonably presume it to be valid.  *Leon*, 468 U.S. at 922–23. As Magistrate Judge Leung stated, "both the application and the warrant specified the information to be seized subject to a temporal limitation, but only the warrant failed to indicate the offense being investigated."  (R&R at 18) (citing *Szczerba*, 897 F.3d at 938–39; *United States v. Saddler*, No. 4:19-CR-40109-01-KES, 2020 WL 6255652, at *5–6 (D.S.D. Oct. 23, 2020); *Purcell*, 967 F.3d at 180–81; *Vogelbacher*, 2021 WL 1017126, at *4).  While the warrant referenced the application but did not expressly incorporate it, the application accompanied the warrant and provided probable cause to believe that evidence related to Defendant's unlawful possession of a firearm would be found within his Facebook account, and a neutral judge signed the warrant.  (*Id.* at 19) (citing *Szczerba*, 897 F.3d at 938–39;

*Saddler*, 2020 WL 6255652, at \*5–6; *Purcell*, 967 F.3d at 181; *Vogelbacher*, 2021 WL 1017126, at \*3).   Finally, although the warrant itself sought information not limited to firearms-related subject matter, "there was no appreciable practical effect on the warrant's sweep due to the manner in which Facebook warrants are executed."   (*Id.*) (citing *Purcell*, 967 F.3d at 183; *Vogelbacher*, 2021 WL 1017126, at \*5).

For all of these reasons, the Court finds that *Leon*'s good-faith exception applies to the evidence seized from "Da Real FatBoa" Facebook account, and Defendant's Motion to Suppress is therefore denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant's Objection [Doc. No. 54] is **OVERRULED**;

2.  The R&R [Doc. No. 51] is **ADOPTED**; and

3.  Defendant's Motion to  Suppress Evidence from Searches of Facebook Account [Doc. No. 33] is **DENIED**.


Dated: September 2, 2021                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge

15